IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FRANCISCO RAMOS-BECERRA**
**and LOUISA RAMOS,**                          :
                                               :      **Civil No. 1:14-CV-00917**
        **Plaintiffs**                         :
                                               :
    **v.**                                     :
                                               :
**RICKY L. HATFIELD, HATFIELD**                :
**TRUCKING and JB HUNT**                       :
**TRANSPORT, INC.**                            :
                                               :      **Judge Sylvia H. Rambo**
        **Defendants**                         :

## MEMORANDUM

In this civil action invoking the court's diversity jurisdiction under 28 U.S.C. § 1332, Plaintiffs bring claims for negligence, negligent hiring, and loss of consortium against Defendants as a result of injuries suffered by Francisco Ramos-Becerra in a motor vehicle accident. Presently before the court is Defendant JB Hunt Transport, Inc.'s Motion for Summary Judgment. For the reasons stated herein, the motion will be denied in its entirety.

## I.      Background

In considering JB Hunt Transport, Inc.'s ("JB Hunt") motion for summary judgment, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to Plaintiffs as the nonmoving party in accordance with the relevant standard when deciding a motion for summary judgment. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

A.      <u>Facts</u>

1.      **The Relationship Between Defendants**

JB Hunt is a transportation logistics company that provides transportation services to customers throughout the United States, Canada, and Mexico. JB Hunt created the Power Carrier or Power Only division which hires trucking companies that own a tractor and operating authority through the Department of Transportation to haul trailers (hereinafter referred to as "motor carriers"). (Doc. 92-2, pp. 14-30, 34, 66.) In order to build this division, JB Hunt employed recruiters to cold call motor carriers and enlist them to enter into an Outsource Carriage Agreement ("OCA"). (*Id.* at 67; Doc. 92-3, pp. 6-7.) Using a motor carrier's Department of Transportation number, recruiters were instructed to ascertain each motor carrier's Department of Transportation rating from a website such as SAFERsys.com, and determine whether each carrier had a specified amount of insurance coverage prior to providing the OCA to the motor carrier. (Doc. 92-2, pp. 69-70; Doc. 92-3, p. 6.) Recruiters were permitted to accept safety ratings of satisfactory or none, but could not accept a conditional or unsatisfactory rating. (Doc. 92-2, pp. 15, 69-70; Doc. 92-3, p. 9.) JB Hunt did not require recruiters to check if any of the motor carrier's drivers had a driving under the influence conviction. (Doc. 92-3, p. 6.)

If the motor carrier had the required insurance and a satisfactory or no safety rating, the recruiter would provide the motor carrier with the OCA and assist in its completion. (*Id.* at 8; Doc. 92-2, pp. 67.) The recruiter then provided the OCA to JB Hunt's Carrier Relations Department to finalize the process and hire the motor carrier as an independent contractor. (Doc. 92-2, pp. 16, 67-68; Doc. 92-3, pp. 8, 13.) The motor carrier was then ready to begin hauling trailers pursuant to its OCA with JB Hunt. (Doc. 92-2, pp. 67-68; Doc. 92-3, p. 8.)

Derek Jones, a JB Hunt recruiter, dealt with Defendant Ricky L. Hatfield ("Hatfield"), owner of Defendant Hatfield Trucking, and took Hatfield Trucking through this process. (Doc. 92-2, pp. 74-75.) Using a report from SAFERsys.com, Jones determined that Hatfield Trucking had an acceptable safety rating of none. (*Id.* at 33.) On April 11, 2013, Hatfield Trucking and JB Hunt executed an OCA and related documents. (*Id.* at 14-30.) At the time of the motor vehicle accident underlying this action, Hatfield Trucking and JB Hunt were operating under this executed OCA, which describes Hatfield Trucking as an independent contractor and defines JB Hunt as "a carrier duly authorized to transport or to arrange for the transportation of freight." (*Id.* at 19.) An accompanying Carrier Profile submitted by Hatfield Trucking lists Hatfield as the only driver. (*Id.* at 16.)

### 2.    Ricky Hatfield's History

Hatfield has been a truck driver since approximately 2000. (Doc. 84-5, p. 5.) He was trained in "freight lines" by Old Dominion and was issued his first commercial driver's license by the state of Tennessee. (*Id.*) In approximately 2005, Hatfield was terminated from Old Dominion after his employer discovered that he had been convicted of grand theft auto when he was a teenager. (*Id.* at 5-6.) Hatfield did not previously report this conviction to Old Dominion or the state of Tennessee when he obtained his commercial driver's license. (*Id.* at 6.)

In August 2009, while working for Big Blue Trucking, Hatfield was arrested and charged in Utah for driving under the influence and failure to stop at the command of a law enforcement officer. (*Id.* at 12; Doc. 92-3, pp. 20-21.) Hatfield pled guilty to both charges, was placed on probation for eighteen months and was required to pay a fine. (Doc. 92-3, pp. 26-27.) He was terminated from Big Blue Trucking due to these convictions. (Doc. 84-5, p. 12.)

In 2011, Hatfield was employed by TCT Trucking, Inc. (Doc. 92-4, p. 9.) During his employment, Hatfield was cited in Louisiana for speeding through a construction zone. (*Id.* at p. 10.) He was terminated soon after this citation for failing an alcohol test requested by TCT Trucking due to reasonable suspicion that Hatfield had been drinking. (*Id.* at 9, 11.)

In 2012, Hatfield purchased his own truck (Doc. 84-5, p. 8), and in 2013, obtained an operating certificate from the Department of Transportation and insurance through OOIDA under the name "Hatfield Trucking." (*Id.* at 8-10; Doc. 92-4, p. 4.) Hatfield Trucking subsequently entered into the OCA with JB Hunt. (Doc. 92-2, pp. 14-30.) Although permitted by the OCA to haul trailers for other companies, Hatfield Trucking exclusively hauled trailers for JB Hunt beginning in April 2013. (Doc. 84-7, p. 34; Doc. 84-5, p. 11.)

### 3. The Accident

From November 15, 2013 through November 18, 2013, Hatfield was driving trailers for JB Hunt from Fredericksburg, Virginia to locations in Pennsylvania and Ohio, and returning to Fredericksburg. (Doc. 92-4, pp. 25-28.) On November 18, 2013, Hatfield accepted a load and transported a trailer to Erie, Pennsylvania (Doc. 84-6, p. 6; Doc. 92-4, p. 28), and then stopped in Breezewood, Pennsylvania for the evening. (Doc. 92-4, p. 28.) He was not scheduled to transport any trailers the following day but had accepted a trailer for pick up in Fredericksburg, Virginia on November 20, 2013. (Doc. 84-6, pp. 6-7.)

Hatfield began drinking in the afternoon of November 19, 2013. (Doc. 84-5, p. 43.) At 5:03 p.m., Hatfield was driving the tractor owned by Hatfield Trucking erratically in the left lane of Interstate 81-North near mile marker 13 in the Middle District of Pennsylvania. (Doc. 1, ¶ 16; Doc. 92-4, pp. 19-20.) Plaintiff Francisco

Ramos-Becerra was lawfully on the shoulder of Interstate 81-North when Hatfield swerved into the right lane, continued onto the shoulder, and struck two parked vehicles and two individuals, including Plaintiff Ramos-Becerra. (Doc. 92-4, pp. 17-21.) Hatfield fled the scene but was later arrested and charged with numerous crimes relating to the accident, including driving under the influence of alcohol after it was determined that his blood alcohol content was 0.17. (*Id.* at 18-20.)

Plaintiff Ramos-Becerra alleges that, as a result of the accident, he sustained catastrophic injuries requiring multiple surgeries and prolonged hospitalizations as a result of the accident, including loss of consciousness, closed fracture of the base of the skull, open right tibia and fibula fracture, multiple bilateral rib fractures, proptosis of the left eye and air within the left eyelid, fluid within the ethmoid aircells and nasal fracture, lacerations, and displaced proximal and digital right fibula fractures. (Doc. 1, ¶ 31.)

### B.   **Procedural History**

Plaintiffs initiated this action by filing a complaint in the Eastern District of Pennsylvania on April 21, 2014. (Doc. 1.) In their complaint, Plaintiffs assert four causes of action under Pennsylvania law against Hatfield, Hatfield Trucking, and JB Hunt as a result of the November 19, 2013 accident. (*Id.*) As to JB Hunt, Plaintiffs claim that the negligence of JB Hunt and its agents or employees, Hatfield and Hatfield Trucking, caused Plaintiff Ramos-Becerra's injuries as well

as loss of companionship for Plaintiff Ramos. (*Id.* at ¶¶ 48-54.) Within Count III, Plaintiffs also claim that JB Hunt was negligent in contracting with Hatfield Trucking. (*Id.* at ¶¶ 48(w)-(x).)

On May 12, 2014, the Eastern District of Pennsylvania ordered, in accordance with the parties' stipulation, that this matter be transferred to the Middle District of Pennsylvania. (Doc. 7.) All Defendants answered Plaintiffs' complaint and JB Hunt filed a cross-claim against Hatfield and Hatfield Trucking. (Docs. 15 & 26.) Following the close of fact discovery, JB Hunt filed a motion *in limine* or, alternatively, a request for a *Daubert* hearing to preclude the testimony of Plaintiffs' commercial transportation expert, Brooks Rugemer. (Doc. 68.) By memorandum and order dated August 3, 2016, the court denied JB Hunt's motion in its entirety, finding that Mr. Rugemer is qualified to testify under Rule 702. (Docs. 101 & 102.)

JB Hunt filed a motion for summary judgment, brief in support, and a statement of facts on May 6, 2016. (Docs. 84, 85, & 86.) On June 3, 2016, Plaintiffs filed a brief in opposition to JB Hunt's motion for summary judgment as well as their own statement of facts and response to JB Hunt's statement of facts. (Docs. 91 & 92.) JB Hunt subsequently filed an answer to Plaintiffs' statement of facts and a reply brief on June 17, 2016. (Docs. 94 & 95.) On June 27, 2016,

Plaintiffs filed a sur reply. (Doc. 98.) Thus, JB Hunt's motion for summary judgment has been fully briefed and is ripe for disposition.

## II.    **Legal Standard**

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issued of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of

material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   <u>Discussion</u>

JB Hunt argues that it is not responsible for Plaintiff Ramos-Becerra's injuries and moves for summary judgment on three bases: (1) JB Hunt was not responsible for investigating Hatfield Trucking's drivers under the Federal Motor Carrier Safety Regulations ("FMCSRs"); (2) Hatfield Trucking was not an agent of JB Hunt; and (3) alternatively, if Hatfield Trucking was JB Hunt's agent, Hatfield

was using his tractor as a personal conveyance at the time of the accident. (Doc. 86, p. 15-41.) Throughout its motion and brief, JB Hunt relies on the FMCSRs to absolve it from liability by arguing that, as a "freight broker," it followed the applicable guidelines set forth in the FMCSRs. *Id.* Plaintiffs oppose JB Hunt's argument that it is a freight broker and argue that JB Hunt was negligent in contracting with Hatfield Trucking without fully investigating its safety rating and drivers' qualifications. (Doc. 92, p. 28.) The court finds it expedient to address the applicability of the FMCSRs as an initial matter, and will then address JB Hunt's other arguments in turn.

### A.    The Applicability of the FMCSRs

JB Hunt's discussion of the FMCSRs consumes the bulk of its motion and briefs. Prior to addressing its argument that Hatfield and Hatfield Trucking were not its agents, JB Hunt argues that the FMCSRs expressly and impliedly preempt Pennsylvania common law, including claims for agency and negligent hiring, and apply to this action. (Doc. 86, pp. 21-22.) Plaintiffs oppose JB Hunt's interpretation and assert that the FMCSRs do not preempt their Pennsylvania common law claims. (Doc. 92, p. 32-34.)

There are three forms of preemption: express preemption, field preemption and conflict preemption. *Roth v. Norfalco LLC*, 651 F.3d 367, 374 (3d Cir. 2011) (citing *Farina v. Nokia, Inc.*, 625 F.3d 97, 116 (3d Cir. 2010)). Express preemption

arises when a federal law "contains language so requiring" and is explicit regarding its preemptive effect. *Id.* (citations omitted). Field preemption occurs "by implication when Congress regulates a domain so pervasively that it leaves no room for state regulation." *Id.* (citing *United States v. Locke*, 529 U.S. 89, 111 (2000)). Lastly, conflict preemption "applies either where it is impossible to comply with both state and federal requirements . . . or 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (internal citation omitted) (quoting *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395-96 (3d Cir. 2010)).

JB Hunt argues that the FMCSRs expressly and impliedly preempt Pennsylvania common law because § 392.2 provides that the FMCSRs must be complied with if it imposes a higher standard of care than the law, ordinance or regulation of a specific jurisdiction. (Doc. 86, p. 22); *see* 49 C.F.R. § 392.2 (2016). This language does not preempt state law, however, nor is preemption the purpose of the FMCSRs. *See* 49 C.F.R. § 392.2; 49 U.S.C. § 31136(a) (2015). Rather, Congress intended the FMCSRs to act as the "minimum safety standards for commercial motor vehicles." 49 U.S.C. § 31136(a). In promulgating the regulations, Congress required the Secretary of Transportation to consider "[s]tate laws and regulations on commercial motor vehicle safety, to minimize unnecessary preemption." 49 U.S.C. § 31136(c)(2)(B). Furthermore, the FMCSRs specifically

provide that it is "not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto." 49 C.F.R. § 390.9.

While the Third Circuit has yet to address this issue, other federal courts have held that the FMCSRs do not preempt state common law claims such as negligence. *See, e.g.*, *Soo Line R.R. Co. v. Werner Enters.*, 825 F.3d 413, 421 (8th Cir. 2016) (holding that the FMCSRs did not foreclose state-law defenses to negligence claims); *Oaks v. Wiley Sanders Truck Lines, Inc.*, Civ. No. 07-cv-0045, 2008 WL 2859021, *4 (E.D. Ky. July 22, 2008) (rejecting the argument that the FMCSRs preempt common law negligent hiring and retention claims); *Schramm v. Foster*, 341 F. Supp. 2d 536, 551 (D. Md. 2004) (finding that the duty imposed by negligent hiring is neither onerous nor incompatible with the FMCSRs); *Sadorf v. Valdez*, Civ. No. 04-cv-1573, 2004 WL 1375534, *3 (N.D. Ill. June 17, 2004) (holding that plaintiffs' negligent entrustment claims are not preempted by the FMCSRs); *Mason v. Dunn*, Civ. No. 14-cv-0282, 2015 WL 5690746, *3 (E.D. Okla. Sept. 28, 2015) (stating that no private cause of action exists under the FMCSRs and therefore it cannot preempt state law); *Kube v. New Penn Motor Express, Inc.*, 865 F. Supp. 221, 233 (D.N.J. 1994) (ruling that the FMCSRs did not preempt plaintiff's handicap discrimination and workers' compensation

retaliation claims and the "only time that a pre-emption question could possibly arise in this context is when the state statute requires conduct which prevents compliance with the [FMCSRs]."").

It is clear to the court that neither the FMCSRs nor their promulgating legislation explicitly requires preemption. Rather, Congress and the Department of Transportation actively tried to avoid preemption by leaving room for states to establish and enforce their own safety standards. *See* 49 U.S.C. § 31136(c)(2)(B); 49 C.F.R. § 390.9. Further, JB Hunt fails to set forth any argument as to how the FMCSRs and Pennsylvania common law claims for negligence, negligent hiring, and loss of consortium conflict.

Therefore, following other federal courts and relying upon the FMCSRs intent to minimize the preemption of state laws, the court finds that the FMCSRs do not preempt Plaintiffs' Pennsylvania common law claims for negligence, negligent hiring, or loss of consortium.

## B.    <u>Negligent Hiring</u>

Applying the FMCSRs, JB Hunt argues that it was not negligent in contracting with Hatfield Trucking because, as a freight broker, JB Hunt had no duty under the FMCSRs to review driving records or criminal backgrounds of Hatfield Trucking's drivers. (Doc. 86, p. 34.) Plaintiffs appear to set forth three arguments in opposition: (1) that JB Hunt cannot use the label of freight broker to

shield itself from liability; (2) that JB Hunt was negligent pursuant to § 411 of the Restatement of Torts in selecting Hatfield Trucking and Hatfield as an independent contractor; and (3) that JB Hunt had a duty to further investigate Hatfield Trucking due to the lack of safety information from SAFERsys.com. (Doc. 92, pp. 23-32.)

Pennsylvania follows § 411 of the Restatement (Second) of Torts for negligent hiring claims. *Lutz v. Cybularz*, 607 A.2d 1089 (Pa. Super. Ct. 1992). Section 411 provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

*Id.* at 1092 n.2 (quoting Restatement (Second) Torts § 411). Plaintiffs allege that JB Hunt was negligent in failing "to perform an appropriate background check before entering into a contract with Hatfield Trucking," and failing "to perform an appropriate background check on Ricky L. Hatfield." (Doc. 1, ¶¶ 48(w)-(x).)

The court agrees with Plaintiffs that JB Hunt cannot shield itself from Plaintiffs' negligent hiring claim by using the label of freight broker to hide behind the FMCSRs. As discussed, the FMCSRs do not preempt Pennsylvania common law claims such as negligent hiring. Regardless of JB Hunt's duties under the

FMCSRs, it can still be liable under Pennsylvania law for its alleged failure to hire a careful and competent contractor.[1]

## C.      Agency

JB Hunt further asserts that summary judgment should be granted in its favor because Hatfield and Hatfield Trucking were not agents of JB Hunt. (Doc. 86, pp. 22-34.) In their memorandum of law in opposition to summary judgment, however, Plaintiffs have expressly abandoned their agency and respondeat superior claims. (Doc. 92, p. 32.) Thus, the court need not address JB Hunt's argument as it is moot.

## D.      Personal Conveyance

Lastly, JB Hunt alternatively argues that Hatfield was using Hatfield Trucking's tractor as a personal conveyance at the time of the accident, thus absolving JB Hunt from liability. (Doc. 86, pp. 42-45.) The principle of frolic and detour asserted by JB Hunt requires a master-servant relationship. *See, e.g.*, *Johnson v. Glenn Sand & Gravel*, 453 A.2d 1048 (Pa. Super. Ct. 1982). As discussed above, Plaintiffs abandoned this theory and no longer assert that Hatfield or Hatfield Trucking were employees of JB Hunt, but that Hatfield Trucking was

---

[1] JB Hunt relies heavily on *CGU International Insurance, PLC v. Keystone Lines Corp.*, Civ. No. 02-cv-3751, 2004 WL 1047982 (N.D. Cal. May 5, 2004), and *McLaine v. McLeod*, 661 S.E. 2d 695 (Ga. Ct. App. 2008), to support its argument that the FMCSRs relieve it from liability. While these cases are persuasive to this court, they are inapplicable. *CGU International Insurance* discusses brokers and motor carriers in the context of the Carmack Amendment, which is a different section of the United States Code dealing with interstate transportation, not motor vehicle safety standards. *See CGU Int'l Ins., PLC*, 2004 WL 104782 at *1-2; 49 U.S.C. §§ 13101-14916; 49 U.S.C. §§ 31100-31161. *McLaine v. McLeod*, a decision from Georgia's intermediate appellate court, is inapposite because it does not rely on the FMCSRs in making its determination. *McLaine*, 661 S.E. 2d at 701.

an independent contractor. Accordingly, the court need not address JB Hunt's argument as it is moot.

## IV.    __Conclusion__

For the reasons stated herein, the court will deny Defendant JB Hunt's motion for summary judgment. An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: October 3, 2016